﻿Citation Nr: AXXXXXXXX
Decision Date: 01/18/19 Archive Date: 01/18/19

DOCKET NO. 180725-176
DATE: January 18, 2019

ORDER

Entitlement to an initial compensable rating for acne is denied.

Entitlement to an initial compensable rating for bilateral hearing loss is denied.

Entitlement to an initial rating in excess of 10 percent for gastroesophageal reflux disorder (GERD) is denied.

Entitlement to an initial compensable rating for a left eye disability is denied.

Entitlement to service connection for a low back disorder is denied.

Entitlement to service connection for a gallbladder disorder is denied.

Entitlement to service connection for high blood pressure is denied.

Entitlement to service connection for a left shoulder disorder is denied.

Entitlement to service connection for a right shoulder disorder is denied.

Entitlement to service connection for a right eye disorder is denied.

FINDINGS OF FACT

1. The Veteran’s acne is superficial and not considered deep.

2. The Veteran’s bilateral hearing loss has been manifested by hearing impairment corresponding to auditory acuity no worse than Level I in the right ear and Level I in the left ear.

3. The Veteran’s service-connected GERD is not characterized by persistently recurrent epigastric distress with dysphagia, pyrosis, and regurgitation, accompanied by substernal or arm or shoulder pain, productive of considerable impairment of health.

4. The Veteran does not have active conjunctivitis of the left eye and there is no loss of vision.

5. The preponderance of the evidence is against finding that the Veteran has a back disorder due to a disease or injury in service, to include a specific in-service event, injury, or disease.

6. The preponderance of the evidence is against finding that the Veteran has a gallbladder disorder due to a disease or injury in service, to include a specific in-service event, injury, or disease, or due to or aggravated by a service-connected disability.

7. The preponderance of the evidence is against finding that the Veteran has hypertension due to a disease or injury in service, to include a specific in-service event, injury, or disease.

8. The preponderance of the evidence is against finding that the Veteran has a left shoulder disorder due to a disease or injury in service, to include a specific in-service event, injury, or disease.

9. The preponderance of the evidence is against finding that the Veteran has a right shoulder disorder due to a disease or injury in service, to include a specific in-service event, injury, or disease.

10. The preponderance of the evidence is against finding that the Veteran has a right eye disorder due to a disease or injury in service, to include a specific in-service event, injury, or disease.

CONCLUSIONS OF LAW

1. The criteria for a compensable initial rating for acne have not been met. 38U.S.C. §§ 1155, 5107 (2012); 38 C.F.R. § 4.118, Diagnostic Code 7828 (2017).

2. The criteria for an initial compensable disability rating for service-connected bilateral hearing loss have not been met. 38 U.S.C. §§ 1155, 5107 (2012); 38 C.F.R. §§ 3.159, 3.321, 4.3, 4.7, 4.85, 4.86, Diagnostic Code 6100 (2017).

3. The criteria for an initial compensable rating in excess of 10 percent for GERD have not been met. 38 U.S.C. §§ 1155, 5107 (West 2012); 38 C.F.R. §§ 3.102, 3.159, 3.321, 4.1, 4.7, 4.10, 4.27, 4.114, Diagnostic Code 7399-7346 (2017).

4. The criteria for an initial compensable disability rating for conjunctivitis of the left eye have not been met. 38 U.S.C. §§ 1155, 5107 (West 2012); 38 C.F.R. §§ 4.79, 4.118, 4.124a, Diagnostic Codes 6018-6066 (2017).

5. The criteria for service connection for a back disorder are not met. 38 U.S.C. §§ 1110, 1131, 5107(b); 38 C.F.R. §§ 3.102, 3.303(a), 3.309.

6. The criteria for service connection for a gallbladder disorder are not met. 38 U.S.C. §§ 1110, 1131, 5107(b); 38 C.F.R. §§ 3.102, 3.303(a), 3.310.

7. The criteria for service connection for hypertension are not met. 38 U.S.C. §§ 1110, 1131, 5107(b); 38 C.F.R. §§ 3.102, 3.303(a), 3.309.

8. The criteria for service connection for a left shoulder disorder are not met. 38 U.S.C. §§ 1110, 1131, 5107(b); 38 C.F.R. §§ 3.102, 3.303(a), 3.309.

9. The criteria for service connection for a right shoulder disorder are not met. 38 U.S.C. §§ 1110, 1131, 5107(b); 38 C.F.R. §§ 3.102, 3.303(a), 3.309.

10. The criteria for service connection for a right eye disorder are not met. 38 U.S.C. §§ 1110, 1131, 5107(b); 38 C.F.R. §§ 3.102, 3.303(a).

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran served on active duty from January 1966 to January 1994. He is also the recipient of a Combat Action Ribbon for his service during the Vietnam War.

On August 23, 2017, the President signed into law the Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55 (to be codified as amended in scattered sections of 38 U.S.C.), 131 Stat. 1105 (2017), also known as the Appeals Modernization Act (AMA). This law creates a new framework for Veterans dissatisfied with VA’s decision on their claim to seek review. The Board is honoring the Veteran’s choice to participate in VA’s test program, RAMP, the Rapid Appeals Modernization Program.

The Veteran selected the Higher-Level Review lane when he submitted the RAMP election form in April 2018. Accordingly, the April 2018 RAMP rating decision considered the evidence of record as of the date VA received the RAMP election form. The Veteran timely appealed this RAMP rating decision to the Board and requested direct review of the evidence considered by the Agency of Original Jurisdiction (AOJ). 

Increased Ratings

Disability ratings are determined by applying the criteria set forth in the VA’s Schedule for Rating Disabilities, which is based on the average impairment of earning capacity. Individual disabilities are assigned separate diagnostic codes. 38 U.S.C. § 1155; 38 C.F.R. § 4.1. The basis of disability evaluations is the ability of the body as a whole, or of the psyche, or of a system or organ of the body to function under the ordinary conditions of daily life including employment. 38 C.F.R. § 4.10. In determining the severity of a disability, the Board is required to consider the potential application of various other provisions of the regulations governing VA benefits, whether or not they were raised by the Veteran, as well as the entire history of the Veteran’s disability. 38 C.F.R. §§ 4.1, 4.2; Schafrath v. Derwinski, 1 Vet. App. 589, 595 (1991).

If the disability more closely approximates the criteria for the higher of two ratings, the higher rating will be assigned; otherwise, the lower rating is assigned. 38 C.F.R. § 4.7. It is not expected that all cases will show all the findings specified; however, findings sufficiently characteristic to identify the disease and the disability therefrom and coordination of rating with impairment of function will be expected in all instances. 38 C.F.R. § 4.21. 

In deciding this appeal, the Board has considered whether separate ratings for different periods of time are warranted, a practice of assigning ratings referred to as “staging the ratings.” See Fenderson v. West, 12 Vet. App. 119 (1999); Hart v. Mansfield, 21 Vet. App. 505 (2008).

1. Entitlement to an initial compensable rating for acne

In the October 2013 rating decision, the RO granted service connection for acne with a noncompensable rating effective December 30, 2011.

Diagnostic Code 7828 provides for a 0 percent rating when there is superficial acne (comedones, papules, pustules, superficial cysts) of any extent. A 10 percent rating is warranted when there is deep acne (deep inflamed nodules and pus-filled cysts) affecting less than 40 percent of the face and neck, or; deep acne other than on the face and neck. A 30 percent rating is warranted when there is deep acne (deep inflamed nodules and pus- filled cysts) affecting 40 percent or more of the face and neck.

An October 2012 VA examination provided a diagnosis of acne and noted the symptoms began in service. Specifically, the Veteran reported bumps along his chest and back that were filled with clear or yellow liquid. The examiner noted the Veteran has not been treated with topical or oral medications within the last 12 months, and no indication of either non-debilitating or debilitating episodes. The examiner also noted the Veteran does not have any visible skin conditions. It was ultimately concluded that the Veteran’s acne is superficial. 

Also of record are VA and private treatment records dated throughout the pendency of the appeal. However, these records do not indicate the Veteran has ever sought treatment for his acne during the appeal. 

The Board finds a compensable disability rating is not warranted for the Veteran’s service-connected acne disorder. The preponderance of the evidence supports that the Veteran’s acne most closely approximates superficial acne throughout the appeal and does not rise to the level of deep acne.

The October 2012 VA examiner specifically indicated superficial acne, supportive of the current noncompensable rating. Moreover, there is no medical evidence suggestive of deep inflamed nodules and/or puss-filled cysts, supportive of a higher ten percent rating. 

The Board also notes that Diagnostic Code 7828 specifically provides that acne can alternatively be rated as disfigurement of the head, face, or neck (Diagnostic Code 7800) or scars (Diagnostic Codes 7802, 7803, 7804, or 7805), depending upon the predominant disability. 38 C.F.R. § 4.118, Diagnostic Code 7828. However, as there is no indication of disfigurement or scarring as a result of the Veteran’s acne, these diagnostic codes are not for application.

As a preponderance of the evidence is against the award a compensable rating, the benefit-of-the-doubt doctrine is not applicable in the instant appeal. See 38 U.S.C. § 5107(b); Ortiz v. Principi, 274 F.3d 1361 (Fed. Cir. 2001); Gilbert v. Derwinski, 1 Vet. App. 49, 55-57 (1991).

2. Entitlement to an initial compensable rating for bilateral hearing loss

The Veteran is seeking an initial compensable rating for his bilateral hearing loss pursuant to 38 C.F.R. § 4.85, Diagnostic Code 6100. By way of history, the Veteran was granted service connection for bilateral hearing loss in the October 2013 rating decision. 

Evaluations of bilateral hearing loss range from noncompensable (i.e., 0 percent) to 100 percent based on organic impairment of hearing acuity, as measured by a controlled speech discrimination test (Maryland CNC) and the average hearing threshold, as measured by puretone audiometric tests at the frequencies of 1,000, 2,000, 3,000 and 4,000 Hertz. The rating schedule establishes 11 auditory acuity levels designated from Level I, for essentially normal hearing acuity, through level XI for profound deafness.

Under 38 C.F.R. § 4.85, Table VI (Numeric Designation of Hearing Impairment Based on Puretone Threshold Average and Speech Discrimination) is used to determine a Roman numeral designation (I through XI) for hearing impairment based on a combination of the percent of speech discrimination (horizontal rows) and the puretone threshold average (vertical columns). The Roman numeral designation is located at the point where the percentage of speech discrimination and puretone average intersect. 38 C.F.R. § 4.85(b). The puretone threshold average is the sum of the puretone thresholds at 1,000, 2,000, 3,000 and 4,000 Hertz, divided by 4. This average is used in all cases to determine the Roman numeral designation for hearing impairment. 38 C.F.R. § 4.85(d).

Table VII (Percentage Evaluations for Hearing Impairment) is used to determine the percentage evaluation by combining the Roman numeral designations for hearing impairment of each ear. The horizontal rows represent the ear having the better hearing and the vertical columns the ear having the poor hearing. The percentage evaluation is located at the point where the rows and column intersect. 38 C.F.R. § 4.85(e).

VA regulations also provide that, in cases of exceptional hearing loss, when the puretone thresholds at each of the four specified frequencies (1,000, 2,000, 3,000 and 4,000 Hertz) is 55 decibels or more, the rating specialist will determine the Roman numeral designation for hearing impairment from either Table VI or VIa, whichever results in the higher numeral. Each ear will be considered separately. 38 C.F.R. § 4.86(a). However, as this will be discussed below, this regulation is not for application in the instant appeal. 

The probative medical evidence of record consists of a VA examination in October 2012, and VA and private treatment records. 

During the October 2012 VA examinations, puretone thresholds, in decibels, were as follows: 

 HERTZ 

 500 1000 2000 3000 4000

RIGHT 15 35 40 70 65

LEFT 10 25 30 40 45

The average puretone threshold reading for the right ear was 53 decibels and 35 decibels for the left ear. Speech audiometry revealed speech recognition ability of 96 percent in the right ear and of 100 percent in the left ear.

As for any functional effect of his hearing loss on activities of daily living, the Veteran reported difficulty in hearing and understanding quiet conversations, speech at a distance, with background noise, or on the television. 

Application of these puretone threshold average levels and speech recognition ability (percentage of discrimination) using Table VI yields values of Level I hearing for the right and left ears. Level I and Level I correspond to a 0 percent rating pursuant to Table VII.

Here, the Board notes the Veteran is not entitled to consideration under the special provisions of § 4.86(a) based on the puretone threshold levels noted above. 

Additionally, the Board notes there are VA and private treatment records associated with the claims file dated throughout this appeal. Further, there are two private audiograms of record dated in August 2015 and September 2016. The August 2015 audiogram resulted in the following findings regarding the puretone thresholds, in decibels: 

 HERTZ 

 500 1000 2000 3000 4000

RIGHT 25 40 45 No value 65

LEFT 30 40 40 No value 65

Speech recognition scores were 80 for the right ear and 84 for the left ear. It was noted that the CID W-22 speech discrimination test was used. 

The September 2016 private audiogram resulted in the following findings regarding the puretone thresholds, in decibels: 

 HERTZ 

 500 1000 2000 3000 4000

RIGHT 35 45 45 70 85

LEFT 30 45 45 No value 55

Speech recognition scores were 88, bilaterally. It was noted that the CID W-22 speech discrimination test was used.

The Board notes that speech discrimination tests used for both the August 2015 and September 2016 audiological evaluations were the CID W-22, not the Maryland CNC as required by 38 C.F.R. § 4.85. Further, the purteone threshold was missing for the right and left ear for the August 2015 audiogram at the 3000 Hz level, and was again missing for the left ear in the September 2016 audiogram. As the findings for these audiological readings are incomplete and the Maryland CNC test was not use, they are inadequate for rating purposes and cannot provide a basis for a compensable evaluation. 

There are no additional audiological evaluations that show the Veteran is entitled to an initial compensable rating at any point during the appeal. 

Based on the findings noted above, the Board finds that the Veteran is not entitled to an initial compensable rating for his bilateral hearing loss. 

The assignment of the disability rating for hearing impairment is derived from a mechanical formula based on levels of pure tone threshold average and speech discrimination. Furthermore, the Court held that “the rating criteria for hearing loss contemplate the functional effects of decreased hearing and difficulty understanding speech in an everyday work environment”—which “are precisely the effects that VA’s audiometric tests are designed to measure’’— and that “when a claimant’s hearing loss results in an inability to hear or understand speech or to hear other sounds in various contexts, those effects are contemplated by the schedular rating criteria.” See Doucette v. Shulkin, 28 Vet. App. 366, 369 (2017). The Board finds that the VA examination is the most probative evidence regarding the severity of the Veteran’s bilaterally hearing loss disability. The VA examination was performed by state-licensed audiologists, and included the controlled speech discrimination test using the Maryland CNC test. 

The Board does not discount the difficulties the Veteran has with his auditory acuity. However, the Board must base its determination on the basis of the results of the audiology studies of record. Lendenmann v. Principi, 3 Vet. App. 345, 349(1992). 

After a review of the entire record, the Board finds that the preponderance of the evidence is against the award of a compensable rating for his bilateral hearing loss at any point during the appeals period. As a preponderance of the evidence is against the award of an increased rating, the benefit-of-the-doubt doctrine is not applicable in the instant appeal. See 38 U.S.C. § 5107(b); Ortiz v. Principi, 274 F.3d 1361 (Fed. Cir. 2001); Gilbert v. Derwinski, 1 Vet. App. 49, 55-57 (1991).

3. Entitlement to an initial rating in excess of 10 percent for gastroesophageal reflux disorder (GERD)

In a June 2017 rating decision, the RO granted service connection for GERD with an initial rating of 10 percent, effective May 9, 2017.

The Veteran’s GERD is rated under Diagnostic Code 7399-7346. A hyphenated diagnostic code is used when a rating under one diagnostic code requires use of an additional diagnostic code to identify the basis for the evaluation assigned; the additional code is shown after the hyphen. When an unlisted disease, injury, or residual condition is encountered, requiring rating by analogy, the Diagnostic Code number will be “built-up” as follows: the first two digits will be selected from that part of the schedule most closely identifying the part, or system of the body involved (here, the digestive system), and the last two digits will be “99” for all unlisted conditions. Then, the disability is rated by analogy under a Diagnostic Code for a closely related disability that affects the same anatomical functions and has closely analogous symptomatology. 38 C.F.R. §§ 4.20, 4.27 (2017). In this case, the RO determined that the Diagnostic Code most analogous to the Veteran’s disability is Diagnostic Code 7346, which pertains to hiatal hernias. 38 C.F.R. § 4.114 (2017).

Diagnostic Code 7346 provides a 10 percent evaluation when the evidence shows two or more of the symptoms for the 30 percent evaluation of less severity. A 30 percent evaluation is warranted when there is persistently recurrent epigastric distress with dysphasia, pyrosis, and regurgitation, accompanied by substernal or arm or shoulder pain, productive of considerable impairment of health. A 60 percent evaluation for symptoms of pain, vomiting, material weight loss and hematemesis or melena with moderate anemia, or other symptom combinations productive of severe impairment of health. 38 C.F.R. § 4.114.

The Veteran was afforded a VA examination in May 2017. The Veteran reported substernal pain, pyrosis (heartburn), regurgitation, and nausea less than once a day. The examiner also noted the use of continuous medication. There were no other clinical findings noted, including a history of epigastric distress, reflux, shoulder pain, anemia, weight loss, hematemesis, or melena. 

VA and private treatment records show complaints of and treatment for GERD. Notably, however, the treatment records do not show any worsening in the Veteran’s reported symptoms of pain, nausea, regurgitation, and pyrosis other than what has been reported in the Veteran’s May 2017 VA examination. 

Based on the evidence above, the Board finds that the Veteran’s GERD was not manifested by symptomatology more nearly approximating persistently recurrent epigastric distress with dysphagia, pyrosis, and regurgitation, accompanied by substernal or arm or shoulder pain, productive of considerable impairment of health at any point during the appeals period. 

While acknowledging that during the course of appeal, the Veteran reported experiencing occasional episodes of pyrosis, regurgitation, nausea, and, substernal pain, the record of evidence does not show that GERD symptomatology has resulted in considerable impairment of the Veteran’s health, part of the criteria necessary to warrant an increased rating. There are no signs of significant weight loss, malnutrition, or anemia. There is also no history of hematemesis, melena, or esophageal distress or dilation. Thus, the evidence of record does not support a finding that the symptoms of the Veteran’s GERD symptoms were persistently recurrent and causing considerable impairment of health. Therefore, the Veteran’s GERD disability for the increased rating period did not more nearly approximate the criteria for a next higher 30 percent rating under Diagnostic Code 7399-7346. Additionally, as there is no evidence of stricture, spasm, or diverticulum of the esophagus, a rating under Diagnostic Codes 7203, 7204, or 7205 is not warranted. 38 C.F.R. § 4.114 (2017).

The Board also notes that the Veteran is competent to report symptoms of his GERD, but not to identify a specific level of disability. The medical findings in this case directly address the criteria under which this disability is evaluated, and the objective medical evidence is accorded greater weight than the subjective complaints of increased symptomatology. Moreover, even if the Veteran’s reports of increased symptoms are credible, the overall increase in disability does not rise to the level which would warrant elevation of the disability rating to the next higher level because “considerable impairment of health” is not demonstrated. 

Therefore, as the preponderance of the evidence is against this claim, reasonable doubt does not arise, and a schedular rating in excess of 10 percent for GERD must be denied. See Gilbert v. Derwinski, 1 Vet. App 49 (1990).

4. Entitlement to an initial compensable rating for a left eye disability

In an October 2013 rating decision, the RO granted service connection for conjunctivitis of the left eye with an initial noncompensable rating, effective from December 30, 2011.

The Veteran is currently evaluated under Diagnostic Code 6018-6066. Hyphenated Diagnostic Codes are used when a rating under one Diagnostic Code requires use of an additional Diagnostic Code to identify the basis for the evaluation assigned; the additional code is shown after the hyphen. 38 C.F.R. § 4.27. When an unlisted disease, injury, or residual condition is encountered, requiring rating by analogy, the Diagnostic Code number will be “built-up” as follows: the first two digits will be selected from that part of the schedule most closely identifying the part, or system of the body involved, in this case, diseases of the eye. Then, the disability is rated by analogy under a Diagnostic Code for a closely related disability that affects the same anatomical functions and has closely analogous symptomatology. 38 C.F.R. §§ 4.20, 4.27. In this case, the RO determined that the Diagnostic Code most analogous to the Veteran’s eye disability is Diagnostic Code 6018, which pertains to chronic conjunctivitis. 

Diagnostic Code 6018 provides the criteria for rating chronic conjunctivitis (non-trachomatous). When active (with objective findings, such as red, thick conjunctivae, mucous secretion, etc.) a 10 percent rating is warranted. When inactive, it is to be evaluated based on residuals, such as visual impairment and disfigurement. 38 C.F.R. § 4.79, Diagnostic Code 6018.

Diagnostic Code 6034 provides the criteria for rating pterygium, which is evaluated based on visual impairment, disfigurement (Code 7800), conjunctivitis (Code 6018), etc., depending on the particular findings. 38 C.F.R. § 4.79, Code 6034.

The severity of visual acuity loss is determined by applying the criteria set forth at 38 C.F.R. § 4.79. Under those criteria, impairment of central visual acuity is evaluated from noncompensable to 100 percent based upon the degree of the resulting impairment of visual acuity or field loss, pain, rest-requirements, or episodic incapacity, combining an additional rating of 10 percent during continuance of active pathology. 38 C.F.R. § 4.79, Diagnostic Codes 6061 to 6066. Disability ratings for impaired vision are generally based on corrected distance vision with central fixation. 38 C.F.R. § 4.76.

Under Diagnostic Code 6066, a non-compensable rating is assigned for impairment of central visual acuity when vision in both eyes is correctable to 20/40. A 10 percent rating is assigned for impairment of central visual acuity in the following situations: (1) when vision in one eye is correctable to 20/100 and vision in the other eye is correctable to 20/40; (2) when vision in one eye is correctable to 20/70 and vision in the other eye is correctable to 20/40; (3) when vision in both eyes is correctable to 20/50; or (4) when the corrected visual acuity is 20/50 in one eye and 20/40 in the other eye. 38 C.F.R. § 4.79, Diagnostic Code 6066. A 20 percent rating is assigned for impairment of central visual acuity in the following situations: (1) 20/70 in one eye and 20/50 in the other eye; (2) 20/100 in one eye and 20/50 in the other eye; (3) 20/200 in one eye and 20/40 in the other eye; or (4) 15/200 in one eye and 20/40 in the other eye. Diagnostic Code 6066 also provides for higher levels of impairment of central visual acuity, up to a maximum 90 percent rating when vision is 10/200 in both eyes. Id.

In granting service connection in the October 2013 rating decision, the RO granted the claim on the basis of a September 2008 private treatment record showing redness in the left eye. 

The Veteran underwent a VA examination in September 2014. At that time, the VA examiner noted the diagnosed conjunctivitis of the left eye was asymptomatic. Diagnoses of cataract and pterygium of the left eye were also rendered. Upon physical examination, uncorrected vision near was 20/50, uncorrected vision far was 20/70, with corrected vision of 20/40 for both near and far. Pupils were round and reactive to light. Additionally, there was no evidence of anatomical loss of the eye, astigmatism, diplopia, or scotoma. The examiner also determined that the pterygium of the left eye does not result in decreased visual acuity or other visual impairment. As for the cataract of the left eye, it was noted to be preoperative and not resulting in any decreased visual acuity or other visual impairment. No other physical findings were noted. 

In May 2015, the Veteran underwent surgery for the pterygium of the left eye. A June 2015 follow-up appointment noted visual acuity in the left eye of 20/50 and the right eye of 20/15. 

Based on the evidence above, the Board finds that a compensable rating is not warranted pursuant to either Diagnostic Code 6018 as the Veteran’s conjunctivitis is not active. 

Further, a compensable rating pursuant to Diagnostic Code 6066 is not warranted for loss of visual acuity as the evidence does not show any of the following conditions: (1) when vision in one eye is correctable to 20/100 and vision in the other eye is correctable to 20/40; (2) when vision in one eye is correctable to 20/70 and vision in the other eye is correctable to 20/40; (3) when vision in both eyes is correctable to 20/50; or (4) when the corrected visual acuity is 20/50 in one eye and 20/40 in the other eye. As such, a compensable rating is not warranted at any point during the appeal. 

Therefore, even acknowledging the Veteran’s diagnosis of pterygium in the September 2014 VA examination, the evidence does not support a compensable rating pursuant to Diagnostic Codes 6018 or 6066. The evidence also does not suggest, and the Veteran has not argued, that he suffers from disfigurement as a result of his pterygium. Therefore, a rating pursuant to 7800 is also not warranted. 

In making its determinations in this case, the Board has carefully considered the Veteran and his wife’s contentions with respect to the nature of his service-connected disability at issue. The Board notes that the Veteran is competent to describe certain symptoms associated with his eye disability. The Veteran’s history and symptom reports have been considered, including as presented in the medical evidence discussed above, and have been contemplated by the currently assigned disability rating. Moreover, the competent medical evidence offering detailed specific findings pertinent to the rating criteria is the most probative evidence with regards to evaluating the pertinent symptoms of the service-connected left eye disability. As such, while the Board relies upon the competent medical evidence with regard to the specialized evaluation of functional impairment, symptom severity, and details of clinical features of the service-connected left eye disability.

As the preponderance of the evidence is against this claim, reasonable doubt does not arise, and a compensable rating for a left eye disability must be denied. See Gilbert v. Derwinski, 1 Vet. App 49 (1990).

Service Connection

Service connection may be established for disability resulting from personal injury suffered or disease contracted in line of duty in the active military, naval, or air service. 38 U.S.C. §§ 1110, 1131. That an injury or disease occurred in service is not enough; there must be chronic disability resulting from that injury or disease. If there is no showing of a resulting chronic condition during service, then a showing of continuity of symptomatology after service is required to support a finding of chronicity. 38 C.F.R. § 3.303(b). Service connection may also be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d). 

The law also provides that diseases associated with exposure to certain herbicide agents used in support of military operations in the Republic of Vietnam (Vietnam) during the Vietnam era will be considered to have been incurred in service. 38U.S.C. § 1116 (a)(1); 38 C.F.R. § 3.307 (a)(6). 

Here, while the Veteran does have confirmed service in the Republic of Vietnam, none of the claimed disorders are included in the list of diseases associated with exposure to herbicide agents. Specifically, for purposes of presumptive service connection due to herbicide exposure, the term “ischemic heart disease” does not include hypertension or peripheral manifestations of arteriosclerosis such as peripheral vascular disease or stroke, or any other condition that does not qualify within the generally accepted medical definition of ischemic heart disease. 38 C.F.R. § 3.309 (e), Note 2 (codified at 38 C.F.R. pt. 4); 75 Fed. Reg. 53, 202-53, 205 (August 31, 2010). 

Additionally, for veterans who served 90 days or more of active service during a war period or after December 31, 1946, certain chronic disabilities are presumed to have been incurred in service if they manifested to a compensable degree within one year of separation from service. 38 U.S.C. §§ 1110, 1112, 1113, 38 C.F.R. 3.307(a), 3.309(a). For the showing of chronic disease in service, there is required a combination of manifestations sufficient to identify the disease entity, and sufficient observation to establish chronicity at the time. If chronicity in service is not established, a showing of continuity of symptoms after discharge is required to support the claim. 38 C.F.R. § 3.303 (b); Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013) (the theory of continuity of symptomatology can be used only in cases involving those disabilities specified as chronic under 38 C.F.R. 3.309 (a)).

In the present case, however, the record does not establish that the Veteran was diagnosed with a back disorder, left and right shoulder disorders, or hypertension, the only disorders for which this presumption would apply, within one year of service. In fact, the Veteran was not diagnosed with hypertension until July 2012, and back, left and right shoulder disorders pursuant to x-ray findings in March 2015. As these disorders were not diagnosed within one year of the Veteran’s separation from service, which would have been by 1995, entitlement to presumptive service connection is not warranted. 

However, as here, the failure to meet the criteria for presumptive service connection does not preclude a Veteran from establishing entitlement to service connection on a different basis. See 38 U.S.C. § 1113 (b); 38 C.F.R. § 3.303 (d) (the availability of service connection on a presumptive basis does not preclude consideration of service connection on a direct basis); Combee v. Brown, 34 F.3d 1039 (Fed. Cir. 1994). 

Thus, the Veteran’s remaining theories of entitlement for service connection for all of the disorders noted below are based on either direct (discussed above) or secondary service connection. 

With regard to secondary service connection, a disability can be service-connected on a secondary basis if it is proximately due to or the result of a service-connected condition. 38 C.F.R. § 3.310 (a). Here, however, the Veteran is claiming, in part, that his gallbladder disorder is due to or aggravated by his in-service high cholesterol. The Veteran is not in receipt of service connection for high cholesterol and, as such, secondary service connection is not a valid theory of entitlement for his gallbladder disorder. 

In making all determinations, the Board must fully consider the lay assertions of record. A layperson is competent to report on the onset and recurrence of symptoms. See Layno v. Brown, 6 Vet. App. 465, 470 (1994) (a Veteran is competent to report on that of which he or she has personal knowledge). Lay evidence can also be competent and sufficient evidence of a diagnosis or to establish etiology if (1) the layperson is competent to identify the medical condition, (2) the layperson is reporting a contemporaneous medical diagnosis, or (3) lay testimony describing symptoms at the time supports a later diagnosis by a medical professional. Davidson v. Shinseki, 581 F.3d 1313, 1316 (Fed. Cir. 2009); Jandreau v. Nicholson, 492 F.3d 1372, 1376-77 (Fed. Cir. 2007). When considering whether lay evidence is competent the Board must determine, on a case by case basis, whether the Veteran’s particular disability is the type of disability for which lay evidence may be competent. Kahana v. Shinseki, 24 Vet. App. 428 (2011); see also Jandreau v. Nicholson, 492 F.3d at 1377 (Fed. Cir. 2007) (holding that “[w]hether lay evidence is competent and sufficient in a particular case is a factual issue to be addressed by the Board”).

As a finder of fact, when considering whether lay evidence is satisfactory, the Board may also properly consider internal inconsistency of the statements, facial plausibility, consistency with other evidence submitted on behalf of the Veteran, and the Veteran’s demeanor when testifying at a hearing. See Dalton v. Nicholson, 21 Vet. App. 23, 38 (2007); Caluza v. Brown, 7 Vet. App. 498, 511 (1995), aff’d per curiam, 78 F.3d 604 (Fed. Cir. 1996). 

When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the benefit of the doubt shall be given to the claimant. 38 U.S.C. § 5107 (b). When a reasonable doubt arises regarding service origin, such doubt will be resolved in the favor of the claimant. Reasonable doubt is doubt which exists because of an approximate balance of positive and negative evidence which does not satisfactorily prove or disprove the claim. 38 C.F.R. § 3.102.

The Board also notes that the Veteran has not been afforded VA examinations addressing his claims, but the Board finds that examinations are not required. The United States Court of Appeals for the Federal Circuit (Federal Circuit) has recognized that there is not a duty to provide an examination in every case. See Waters v. Shinseki, 601 F.3d 1274 (Fed. Cir. 2010). Rather, the Secretary’s obligation under 38 U.S.C. § 5103A (d) to provide the Veteran with a medical examination or to obtain a medical opinion is not triggered unless there is an indication that the disability or persistent or recurrent symptoms of a disability may be associated with the Veteran’s service or with another service-connected disability. See McLendon v. Nicholson, 20 Vet. App. 79, 81 (2006). 

Regarding the claims of service connection for a low back disorder, a gallbladder disorder, high blood pressure, right and left shoulder disorders, and a right eye disorder, the evidence does not indicate the claimed disorders are due to or aggravated by the Veteran’s military service. The Veteran has not offered any competent and credible medical records to suggest otherwise. These facts are insufficient to trigger VA’s duty to provide examinations. See Waters, 601 F.3d 1274. 

Finally, by virtue of the Veteran’s receipt of a Combat Action Ribbon, the provisions of 38 U.S.C. § 1154 (b) may be applicable in this case. That statute provides, in pertinent part, that in any case where a Veteran is engaged in combat during active service, lay or other evidence of service incurrence of a combat related disease or injury will be considered sufficient proof of service connection if consistent with the circumstances, conditions, or hardships of such service, notwithstanding the fact that there is no official record of such incurrence during service, and, to that end, VA shall resolve every reasonable doubt in favor of the Veteran. The United States Court of Appeals for the Federal Circuit has held that, in the case of a combat Veteran, not only is the combat injury presumed, but so, too, is the presence of a disability due to the in-service combat injury. Reeves v. Shinseki, 682 F.3d 988, 998-99 (Fed. Cir. 2012). To establish entitlement to service connection, however, there still must be evidence of a current disability and a causal relationship between the current disability and the combat injury. Id. 

Here, the Veteran has alleged that he sustained his musculoskeletal injuries to his low back and right and left shoulders while lifting heavy objects, to include projectiles into the ship’s gun-mount. However, even assuming, arguendo, that the Veteran did injure himself during this time, the fact remains that he did not seek treatment for or receive a diagnosis for these disabilities at any point before March 2015, which is more than 10 years after his separation from service. Maxson v. West, 12 Vet. App. 453 (1999) (service incurrence may be rebutted by the absence of medical treatment of the claimed condition for many years after service). 

5. Service connection for low back disorder, and right and left shoulder disorders

As discussed above, the only remaining theory of entitlement pursuant to which the Veteran may establish service connection for the claimed disorders is direct service connection. In this respect, the Veteran is alleging all disorders are due directly to his military service. Regarding his low back and bilateral shoulders disorders, he states it is his believe that he sustained injuries due to heavy lifting in service, including loading projectiles into the ship’s gun-mount. He states he took Tylenol for the pain. 

The question for the Board is whether the Veteran’s claimed disorders began during service or are at least as likely as not related to an in-service injury, event, or disease.

The Board concludes that, while the Veteran has current diagnoses of degenerative disc disease of the low back (see March 2015 VA treatment record), and arthropathies of the right and left shoulder disorders (see March 2015 VA treatment record), the preponderance of the evidence weighs against finding that any of the claimed disorders began during service or is otherwise related to an in-service injury, event, or disease. 38 U.S.C. §§ 1110, 1131, 5107(b); Holton v. Shinseki, 557 F.3d 1363, 1366 (Fed. Cir. 2009); 38 C.F.R. § 3.303(a), (d).

In this respect, the Veteran’s service treatment records are completely silent regarding any complaints, treatment, or diagnoses for a low back disorder, or right and left shoulder disorders, to include notations of pain. 

In fact, including the VA and private treatment records associated with the claims file, there are no etiological opinions attributing the claimed disorders to the Veteran’s military service, other than the Veteran and his wife’s unsubstantiated lay statements. 

The Board has considered the Veteran’s and his wife’s statements that the claimed disorders are due to the Veteran’s military service. While the Veteran and his wife may believe these disorders are related to an in-service injury, event, or disease, they are not competent to provide nexus opinions in this case, as the issues of causation in this case require knowledge and interpretation of complicated diagnostic medical testing which extends beyond an immediately observable cause-and-effect relationship. Opinions of this type have been found to be beyond the competence of lay witnesses, such as the Veteran and his wife. Jandreau v. Nicholson, 492 F.3d 1372, 1377 n.4 (Fed. Cir. 2007). 

Accordingly, service connection for a low back disorder and a right and left shoulder disorders is not warranted because the Veteran has not satisfied the nexus requirement of attributing these disorders to his active service. See 38 C.F.R. § 3.303. In reaching the above conclusions, the Board has considered the benefit-of-the-doubt doctrine. However, as the preponderance of the evidence is against the claims, that doctrine does not apply. 38 U.S.C. § 5107 (b). The claims of entitlement to service connection for are denied.

6. Service connection for a gallbladder disorder, high blood pressure, and a right eye disorder

As discussed above, the only remaining theory of entitlement pursuant to which the Veteran may establish service connection for the claimed disorders is direct service connection. In this respect, the Veteran is alleging all disorders are due directly to his military service. As for the hypertension, the Veteran states he complained of chest pain in service. As for the right eye disorder and gallbladder disorder, the Veteran has not set forth any specific in-service injuries to account for the current disorders. 

The question for the Board is whether the Veteran’s claimed disorders began during service or are at least as likely as not related to an in-service injury, event, or disease.

The Board concludes that, while the Veteran has current diagnoses of a gallbladder disorder (see August 2016 private treatment record), high blood pressure (see July 2012 private treatment record), and a right eye disorder (see September 2014 VA examination), the preponderance of the evidence weighs against finding that any of the claimed disorders began during service or is otherwise related to an in-service injury, event, or disease. 38 U.S.C. §§ 1110, 1131, 5107(b); Holton v. Shinseki, 557 F.3d 1363, 1366 (Fed. Cir. 2009); 38 C.F.R. § 3.303(a), (d).

In this respect, the Veteran’s service treatment records are completely silent regarding any complaints, treatment, or diagnoses for a gallbladder disorder, high blood pressure, and a right eye disorder. 

In support of his claim for high blood pressure, the Veteran submitted an October 2016 statement from his private physician, Dr. A.K. Dr. A.K. stated that the Veteran has been under his care since 2008 and is being treated for hypertension which is at least as likely as not may have been caused by his military service. No rationale was provided.

Additionally, in support of his claim for a right eye disorder, diagnosed as cataracts and loss of vision, the Veteran submitted an October 2016 statement from his private physician, Dr. M.P. Dr. M.P. stated that the Veteran’s exposure to significant amounts of sunlight at sea, to include deck duties, more than likely contributed to the early onset of cataracts in his eyes. Dr. M.P. also noted, however, that he did not have access to previous medical records. 

The Board notes, however, these medical opinions obviate any discussion of the Veteran’s medical history and are, in essence, conclusory as rationale was not provided by either physician regarding the findings noted above. Accordingly, the Board finds that these opinions are entitled to little to no probative value. See Nieves-Rodriguez v. Peake, 22 Vet. App. 295 (2008); Stefl v. Nicholson, 21 Vet. App. 120, 124 (2007).

Further, despite the existence of the VA and private treatment records associated with the claims file, these records do not contain any etiological opinions attributing the claimed disorders to the Veteran’s military service. 

The Board has considered the Veteran’s and his wife’s statements that the claimed disorders are due to the Veteran’s military service. While the Veteran and his wife may believe these disorders are related to an in-service injury, event, or disease, they are not competent to provide nexus opinions in this case, as the issues of causation in this case require knowledge and interpretation of complicated diagnostic medical testing which extends beyond an immediately observable cause-and-effect relationship. Opinions of this type have been found to be beyond the competence of lay witnesses, such as the Veteran and his wife. Jandreau v. Nicholson, 492 F.3d 1372, 1377 n.4 (Fed. Cir. 2007). 

Accordingly, service connection for a gallbladder disorder, high blood pressure, and a right eye disorder is not warranted because the Veteran has not satisfied the nexus requirement of attributing these disorders to his active service. See 38 C.F.R. § 3.303. In reaching the above conclusions, the Board has considered the benefit-of-the-doubt doctrine. However, as the preponderance of the evidence is against the claims, that doctrine does not apply. 38 U.S.C. § 5107 (b). The claims of entitlement to service connection for are denied.

 

YVETTE R. WHITE

Veterans Law Judge

Board of Veterans’ Appeals

ATTORNEY FOR THE BOARD T. Berry, Counsel